IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DEON HAMPTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17−cv–0860−MJR |
| | ) | |
| MEYER, | ) | |
| SCRO, | ) | |
| ELIJAH B. SPILLER, | ) | |
| PESTKA, | ) | |
| LAWLESS, | ) | |
| ADAMS, | ) | |
| HENLLY, | ) | |
| KAYS, | ) | |
| KENNEDY, | ) | |
| MERCKS, | ) | |
| PORTER, | ) | |
| JAMES, | ) | |
| HOMOYA, | ) | |
| BENNETTT, | ) | |
| LIND, | ) | |
| FRANK MAL SHANE, | ) | |
| BRANDON JUSTICE, | ) | |
| CHARLES W. HECK, | ) | |
| LOVE, | ) | |
| THOMAS, | ) | |
| DUDEK, | ) | |
| WILLIAMS, | ) | |
| MCBRIDE, | ) | |
| JONES, | ) | |
| MARCUS D. MEYERS, | ) | |
| MAJOR LIVELY, | ) | |
| JAIMEK KERAN, | ) | |
| M. JONES, | ) | |
| S. WALLER, | ) | |
| JOHN JOE, | ) | |
| BOWLES, | ) | |
| JOHN BALDWIN, and | ) | |
| WEXFORD MENTAL HEALTH | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

1

# MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Deon Hampton, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 for events that allegedly occurred at Pinckneyville Correctional Center. Plaintiff seeks damages, injunctive relief, and declaratory relief. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**The Complaint**

As an initial matter, Plaintiff's Complaint has many pages that are completely illegible due to poor photocopying and the sloppiness of Plaintiff's handwriting and grammar. To the extent that Plaintiff attempted to bring claims not described in this Order, those claims are **DISMISSED without prejudice** for the reasons of sound judicial administration because they were illegible. Plaintiff may file an amended complaint in an attempt to clarify any claims he intended to bring; any amended complaint should also include claims already pending in this case and follow all applicable local rules and Federal Rules of Civil Procedure.

Plaintiff is a transsexual woman, yet resides in a male prison. (Doc. 1, p. 10). On March 4, 2017 at 7:30 pm, Meyers, Scro, Spiller, Henlly, Pestka, Lawless, Adams, Porter, Dudek, and Jones, came to Plaintiff's cell and told him[1] to put on a bra and thong and perform sexual dance moves. (Doc. 1, p. 10, 20). Plaintiff was forced to reveal his breasts and buttocks. (Doc. 1, p. 20). The defendants taunted him and called him names like "sissy," "faggot," "cocksucker," etc. (Doc. 1, p. 10, 20). Meyers, Scro, Adams, Spiller, and Henlly took Plaintiff to an office and directed Plaintiff to sing happy birthday and have phone sex with a person on the other end of a call. (Doc. 1, p. 10, 20). Plaintiff was told not to tell anyone about the incident. (Doc. 1, p. 10). But later, Plaintiff reported the incident. (Doc. 1, p. 11).

Plaintiff also alleges that staff, including Homoya, Porter, Mercks, Kennedy, Henlly, Adams, Lawless, Pestka, Spiller, Scro, Meyers, Jones, and Dudek, have been forcing him to

---

[1] Plaintiff's preference regarding gender pronouns is unclear. The Court will use masculine pronouns, but does not decide Plaintiff's gender for the purpose of this case.

expose himself and have paid him for sexual favors. (Doc. 1, p. 21). James, Meyer, Homoya and Scro would continually come to Plaintiff's cell and degrade him in front of other inmates by calling him names like "dick sucker." (Doc. 1, p. 11) (Doc. 1-1, p. 7).

On May 24, 2017, staff assaulted Plaintiff. (Doc. 1, p. 11). The incident started when Homoya came to Plaintiff's cell and began making comments of a sexual nature. (Doc. 1, p. 12). Plaintiff felt degraded and feared for his life. *Id.* He told Homoya he was going to invoke the Prison Rape Elimination Act, ("PREA.") (Doc. 1, p. 12) (Doc. 1-1, p. 9). Homoya responded that he would put Plaintiff in segregation on a bogus ticket. Homoya returned with Scro, Adams, Meyer, Pestka, Henlly, Kays, Kennedy, Mercks, Porter, James, Bennett, Lively, Jones, and Williams. (Doc. 1, p. 13). They told Plaintiff to cuff up and then once he did so, they attacked him. (Doc. 1, pp. 12-13). Plaintiff was kicked, spit on, and dragged from his cell. (Doc. 1, p. 13). He begged the guards not to kill him. *Id.* He was taken to a cloth room where Adams, Lively, Porter, and Bennett beat him some more. *Id.* Porter and Henlly then took out a knife and proceeded to cut all of Plaintiff's clothes off, including his bra, and then began to cut off his hair. (Doc. 1, pp. 14, 23). Plaintiff was finally left alone; the guards yanked his wrists when they uncuffed him through the chuck hole. *Id.* Plaintiff was left completely naked without a bedsheet, a blanket, or a jumpsuit. *Id.* As a result of the attack, Plaintiff suffered from a broken tooth and a bruised chest. (Doc. 1, p. 17).

Plaintiff reported the attack to the med line nurse the next morning. *Id.* He was then taken to Internal Affairs to be interviewed by Defendant Frank Bowles. *Id.* Bowles became angry at Plaintiff's accusations and began to hit him on his head. (Doc. 1, p. 15). He then told Plaintiff he would write him a bogus ticket and instruct the others to give Plaintiff the max. *Id.* Plaintiff has named Charles Heck and Meyer as defendants in this lawsuit because they found

Plaintiff guilty of the bogus ticket. (Doc. 1, p. 18). Plaintiff was sent to segregation, lost good time, and was assigned to C-grade status. (Doc. 1, p. 19). Plaintiff alleges that Heck and Meyer violated his due process rights, retaliated against him, and assigned excessive punishment in violation of the Eighth Amendment when they found him guilty of a bogus ticket. (Doc. 1, pp. 18-19).

While in segregation, Plaintiff was denied meals and showers. (Doc. 1, p. 25). He specifically alleges that Dudek and Waller condoned this conduct. (Doc. 1, p. 29).

Plaintiff alleges that on July 4, 2017, Warden Love walked through the segregation unit. (Doc. 1-1, pp. 5, 16). Plaintiff attempted to speak with Love, but Love refused to come over and speak with Plaintiff, calling him a "faggot" and stating that he doesn't condone a gay lifestyle and that Pinckneyville is a men's prison. *Id.*

Plaintiff also wrote grievances about the events at issue in this lawsuit. (Doc. 1, p. 15). He wrote grievances to Warden Keren (Jaimek), but she failed to respond. *Id.* Plaintiff also wrote to the director of the IDOC and sent him grievances regarding the mistreatment, but he failed to respond. (Doc. 1, p. 18). He alleges Wardens Love and Thomas are liable for failing to respond to grievances. (Doc. 1, p. 25).

Plaintiff named Wexford Mental Health as a Defendant because they allowed all of the above conduct to happen and did not report it or intervene to stop it. (Doc. 1, p. 27). He further alleges that all of the named defendants conspired to cover up his sexual abuse and sexual assault. *Id.*

**Discussion**

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into 6 counts. The parties and the Court will use these designations in all future

5

pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims survive threshold review:

> **Count 1** – Homoya, Porter, Mercks, Kennedy, Henly, Adams, Lawless, Pestka, Spiller, Scro, Meyer, Jones, Dudek, James, Love, Keren, and Baldwin subjected Plaintiff to cruel and unusual punishment under the Eighth Amendment when they engaged in a campaign of harassment against him, including calling him derogatory names, forcing him to engage in sexual dances for their amusement, forcing him to expose himself, forcing him to engage in phone sex, and otherwise paying him to engage in sexual behavior, specifically on March 4, 2017, and at other times;
>
> **Count 2** – Homoya, Scro, Adams, Meyer, Pestka, Henly, Kays, Kennedy, Mercks, Porter, James, Bennett, Lively, Jones, Williams, Keren, and Baldwin used or condoned the use of excessive force on Plaintiff in violation of the Eighth Amendment and committed a state law battery when they beat him and cut his clothes off on May 24, 2017.

Plaintiff has also attempted to bring other Counts, but for the reasons elucidated below, these claims do not survive threshold review.

> **Count 3** – Bowles, Heck, and Meyers violated Plaintiff's due process rights under the Fourteenth Amendment when they issued him a false disciplinary ticket as a result of the May 24th incident and disciplined him on the basis of that ticket;
>
> **Count 4** – Plaintiff was deprived of meals and showers while in segregation by Dudek and Waller;
>
> **Count 5** – Defendants retaliated against Plaintiff in violation of the First Amendment;
>
> **Count 6** – Defendants engaged in a conspiracy against Plaintiff.

As to Plaintiff's **Count 1**, Plaintiff has alleged that he has been subjected to routine and incessant name calling, along with more serious forms of sexual harassment, including the forced performance of actual sex acts. The Eighth Amendment prohibits the unnecessary and wanton infliction of pain. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The gratuitous infliction of suffering violates contemporary standards of decency and an inmate need not show a serious physical injury to state a claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Allegations of

sexual misconduct, particularly where the sexual misconduct is designed to humiliate and demean, state a claim for relief under the Eighth Amendment. *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003); *see also Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (verbal harassment, coupled with other instances of sexual harassment stated an Eighth Amendment claim).

Here Plaintiff has alleged that many of the named defendants have engaged in continual name-calling due to the fact that Plaintiff is a trans-woman. He also alleges that even Warden Love stooped to such conduct. Moreover, he alleges that a number of the defendants have taken things further and demanded sexual favors from Plaintiff. There is no rational penological justification for such conduct, and continual sexual harassment violates contemporary standards of decency. He has also alleged that he filed grievances about the harassment to Warden Keren and John Baldwin and received no replies. The failure to respond to grievances about such conduct suggests that Warden Keren and Baldwin approved, condoned, or turned a blind eye, which is sufficient to establish their personal involvement. Plaintiff has adequately alleged that the Defendants violated his Eighth Amendment rights. **Count 1** will be permitted to proceed.

In **Count 2**, Plaintiff has alleged that when he threatened to report an act of sexual harassment, he was cuffed and beaten, despite the fact that he was not resisting the guards at the time. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1,

7

6 (1992)). The factors relevant to this determination include: (1) the need for the application of force; (2) the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009); *Outlaw v. Newkirk,* 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

Here Plaintiff alleges that he was ordered to cuff up, beaten, and that his clothes were cut off because he angered Homoya. Plaintiff alleges that he was not resisting the guards and even told them that if they removed his handcuffs, he would take off his clothes for them. As Plaintiff has alleged that he was beaten by multiple guards while handcuffed and that he was not resisting at the time of the incident, Plaintiff has adequately alleged that the force was not used in a good-faith effort to restore discipline. Plaintiff also alleged that he wrote grievances on this issue to Warden Keren and Baldwin, and that they failed to respond, which establishes a sufficient basis for their personal involvement at the pleading stages. On these facts, Plaintiff has adequately stated an excessive force claim against the Defendants.

Plaintiff has also brought a claim under a battery theory of liability. Pursuant to Illinois state law, battery is defined as the unauthorized touching of another's person. *Welton v. Ambrose*, 814 N.E.2d 970, 979 (Ill. App. 2004). Plaintiff has alleged not only that he was beaten, which is a classic example of a battery, but also that his clothes were removed and his hair was cut. On these facts, Plaintiff has adequately stated a battery claim. However, the Court notes that Plaintiff is only entitled to a single recovery on the same set of facts; he cannot get paid twice for events that only happened once.

8

The rest of Plaintiff's claims must be dismissed at this time. Plaintiff has alleged that he was wrongfully disciplined as a result of the May 24th incident. However, Plaintiff alleges that he lost good time credit as part of that discipline. He has also not alleged that the discipline was overturned or expunged, or that his good time credit was restored. That makes his claim barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Supreme Court stated that a prisoner's § 1983 claim is not cognizable if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. Thus, a prisoner's claim for damages is barred unless the prisoner can demonstrate the conviction or sentence has previously been invalidated. The Supreme Court extended the *Heck* doctrine to civil rights claims arising out of prison disciplinary hearings. *Burd v. Sessler*, 702 F.3d 429, 434 (7th Cir. 2012) (citing *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) ("[R]espondent's claim[s] . . . that necessarily imply the invalidity of the punishment imposed, [are] not cognizable under § 1983."). Thus, for Plaintiff to proceed on any claim regarding his disciplinary ticket, he must first show that the ticket has been expunged, overturned or that his good time credit has been restored. **Count 3** will be dismissed without prejudice, and Plaintiff may bring this claim again should he manage to overturn the discipline in another proceeding.

In **Count 4**, Plaintiff alleges that while in segregation, he only got a single shower a month and that he lost weight. The state has an obligation to provide its inmates with a "healthy, habitable environment." *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (internal citations omitted). However, there is no bright line rule that says prisons are required to provide a certain number of showers. *Davenport v. DeRobertis*, 844 F.2d 1310, 1316-17 (7th Cir. 1988) (Eighth Amendment does not require 3 showers per week).

9

Here Plaintiff has alleged "I bring claim against Lt. Swaller (Waller) the reason why I bring Claim against Sgt. Dudek is because he retaliated against me by not given me shower." (Doc. 1, p. 29)(grammatical errors in original). This allegation is vague and conclusory. For one, it is not clear what the basis of Plaintiff's claim is against either of the Defendants. The Court cannot discern any allegations of what Waller and Dudek's role may have been, or *how* they acted to deprive Plaintiff of showers. Although Plaintiff is not required to plead specific facts, he must state enough facts to suggest that a constitutional violation is plausible to satisfy the standard in *Iqbal* and *Twombly*. It is not clear from Plaintiff's statement that Dudek denied him "shower" whether Plaintiff is talking about a single denial, a string of denials, or whether he merely complained to Dudek not receiving showers. There are a number of reasons why Plaintiff may have been deprived of showers, and the deprivation of a single shower fails to state a claim. Without more facts establishing that the extent of the deprivation reached constitutional dimensions, and that Dudek actually caused the deprivation or knew about its full extent, Plaintiff has failed to state a claim as to him. As to Waller, Plaintiff has done nothing but invoke his name. That is not sufficient to state a claim. Both Defendants will be dismissed.

Plaintiff has also failed to state a claim as to his allegation that he was deprived of food. Correctional officials are obligated to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *French v. Owens,* 777 F.2d 1250, 1255 (7th Cir.1985), *cert. denied,* 479 U.S. 817, (1986) (quoting *Ramos v. Lamm,* 639 F.2d 559, 571 (10th Cir.1980), *cert. denied,* 450 U.S. 1041 (1981)). Withholding food is not a *per se* objective violation of the Constitution; courts must assess the amount and duration of the deprivation. *Reed v. McBride,* 178 F.3d 849, 853 (7th Cir.1999). It is not clear from the Complaint how many meals Plaintiff

10

missed. He alleges at various points that he lost 65 lbs., but he has not provided the Court with his starting and ending weight. Sixty-five pounds could represent a significant weight loss, or it could represent a healthy weight loss.

Additionally, the Court construed this claim against Waller and Dudek because the Complaint makes the allegations about the weight loss and the showers together in the same part of the Complaint. However, the Court has been unable to find a specific instance where Plaintiff states that Waller and Dudek are responsible for his weight loss. Without more specific allegations as to the extent of the food deprivation and any potential defendants' role in it, the claim fails for lack of specificity.

It is possible that there are allegations in the Complaint that speak to these issues. If so, the Court was unable to read them due to the aforementioned legibility issues. **Count 4** will be dismissed without prejudice for failure to state a claim, and Plaintiff may file an Amended Complaint with more specific (and legible) factual allegations as to these issues.

Plaintiff makes general allegations of retaliation throughout the Complaint, however, he has failed to state a claim in **Count 5**. To succeed on a First Amendment Retaliation claim, a plaintiff must prove 1) that he engaged in conduct protected by the First Amendment; 2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and 3) that the protected conduct was a "motivating factor" for taking the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

In order to determine whether speech constitutes protected First Amendment Activity, the Court employs the *Turner* test. In *Turner v. Safley*, the Supreme Court articulated the penological interest test: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. 78,

89 (1987). The question is whether the speech at issue is consistent with legitimate penological objectives. *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009).

Here, it is unclear what protected conduct Plaintiff engaged in. Plaintiff alleges that he threated to report Homoya under PREA, but does not state that he actually did so. The threat to engage in protected conduct cannot be the basis for a retaliation claim; Plaintiff must actually have "spoken." *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) ("But it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance.") (emphasis in original). So Plaintiff's comments regarding PREA cannot actually support a claim. There are other allegations that may support a claim if they were not so vague. Plaintiff has alleged that he wrote grievances, and possibly other written complaints, but it is not clear to the Court whether he did so before or after the events at issue. Plaintiff has also sued a large number of people, and it is not clear from the Complaint whether individuals who engaged in a particular course of conduct were aware or knew about any protected activity. The fact that multiple adverse events occurred during the same time period is not sufficient to establish that the events were related or that one was retaliation for the other. Plaintiff has not pleaded enough facts to make retaliation a plausible inference from the Complaint, and therefore **Count 5** will be dismissed without prejudice for failure to state a claim.

Plaintiff has also generally made allegations of conspiracy, but because the Court finds the allegations conclusory, it will also dismiss **Count 6** without prejudice. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (citations omitted). "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an

agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304-05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* at 305 (citation omitted). The Plaintiff's mention of a conspiracy is insufficient, even at this early stage, to satisfy basic pleading requirements under Federal Rule of Civil Procedure 8 or *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (requiring a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face"). Plaintiff has provided no facts from which a conspiracy could be inferred, therefore **Count 6** shall be dismissed without prejudice to Plaintiff filing an amended complaint.

Plaintiff has also failed to state claims against multiple named defendants. For example, Plaintiff named Wexford Mental Health as a defendant. Plaintiff's allegation against Wexford is that Wexford knew about the unconstitutional conduct and refused to intervene to stop it. Wexford is a corporation, and Plaintiff's theory of liability against them is problematic. Plaintiff has not alleged that any of the named Defendants are Wexford employees, and even if he had, his claim would fail because there is no respondeat superior liability under § 1983. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981). Wexford cannot be held liable for the actions of its employees; it has to have acted directly.

The only way a corporate defendant can be held liable is if the unconstitutional conduct occurred pursuant to an official policy or custom. Plaintiff makes no allegation that any

13

individual defendant acted or failed to act as a result of an official policy espoused by Wexford. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the violation). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). As Plaintiff has not alleged that any of the named defendants acted pursuant to a Wexford policy, Wexford cannot be held liable for any of the conduct at issue. Wexford will be dismissed.

There are other problematic defendants as well. The only mention the Court can find of Defendants Lind and John Joe occurs on Doc. 1, p. 24. There Plaintiff alleges that after the beating he suffered on May 24, Nurse Kim Richardson[2] came by his cell and wrote a report stating that Homoya falsified records by claiming that Plaintiff had been seen by a doctor after the beating when he in fact received no medical attention. (Doc. 1, p. 24). Plaintiff then states that "this is why I bring claims" against, among others named in other counts, Lind, Thomas, and John Joe. The fact that a non-party wrote a report does not establish that other parties were personally involved in the underlying constitutional violation. While receipt of grievances and complaints may establish that a particular defendant knew about an alleged constitutional violation and approved, condoned, or turned a blind eye to it, *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015), here Plaintiff has not alleged that Lind, Thomas, or Joe knew about Richardson's report, and it is not a reasonable inference from the Complaint. Without knowing about the alleged violation, there is no way those individuals can be held liable. Plaintiff has failed to state a claim against Lind and John Joe and they will be dismissed without prejudice.

---

[2] Plaintiff did not name Richardson in the Caption of his Complaint, which excludes her from consideration as a Defendant. Fed. R. Civ. P. 10(a); *Cash v. Marion Cnty Jail*, 211 F. App'x 486, 488 (7th Cir. 2006). There are a couple of other individuals referred to in the body of the Complaint, but not mentioned in the Caption. The Court does not interpret the Complaint to bring claims against those individuals.

Thomas was also mentioned in connection to Richardson's report and Plaintiff also alleges that he wrote Thomas a grievance. As discussed above, Plaintiff's allegations about Richardson's report do not establish that Thomas was personally involved in the conduct that Plaintiff complains of because Plaintiff does not allege that Thomas either received or knew about Richardson's report. Plaintiff's allegation that he wrote Thomas a grievance also fails to rise to that level. First of all, although Plaintiff identifies Thomas as a "warden" it is not clear what his exact job title is or that he is involved in the grievance process. The grievance process specifies that the Chief Administrative Officer must review grievances, 20 Ill. Adm. Code § 504.830(d), but the assistant wardens have no such obligation, so unless there is a specific allegation otherwise, there is no reason to believe that an individual read a grievance just because they have the title of "warden." Secondly, the subject of the grievance that Plaintiff allegedly sent to Thomas is unclear, and the grievance itself is not in the record. There are multiple allegations in this Complaint, some of which state claims and some of which do not. Without an allegation regarding the substance of the grievance, the Court cannot make a determination about which claims Thomas may have been personally involved in, making the allegation as to him too vague. Therefore the Court finds that Plaintiff has not stated a claim against Warden Thomas.[3]

Plaintiff has additionally named Defendants Frank Mal Shane, Justice, and McBride. However, the Court cannot find any allegations against those individuals in the Complaint. The Court is unable to ascertain what claims, if any, Plaintiff has against these Defendants.

---

[3] This logic applies to Warden Love as well, although unlike Thomas, Plaintiff has adequately alleged that Love was personally involved in the harassment at issue in Count 1. Failure to respond to grievances is not an independent ground for liability. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

The reason that plaintiffs, even those proceeding *pro se*, for whom the Court is required to liberally construe complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

Because Plaintiff has not listed Defendants Shane, Justice, and McBride elsewhere in his complaint, he has not adequately stated claims against these individuals, or put them on notice of any claims that Plaintiff may have against them. For this reason, Defendants Shane, Justice, and McBride will be dismissed from this action without prejudice.

In the alternative, Plaintiff's Complaint against Shane, Justice, and McBride runs afoul of Fed. R. Civ. P. 8(a), which requires a short and plain statement of the claim showing that the pleader is entitled to relief. As discussed above, Plaintiff's Complaint is difficult to decipher. It is 35 pages long and contains what appear to be 2 separate but complete statements of the claims in this case, one after another. The quality of the handwriting and photocopying is poor, and parts of the Complaint are completely unreadable. To the extent that Plaintiff has included

claims against these defendants in the unintelligible portions of the Complaint he has run afoul of Rule 8, and those claims are dismissed without prejudice.

Finally, Plaintiff has brought claims against 2 individuals named Jones. One is listed as "Mr. Jones" and the other is listed as "M. Jones." The Court cannot distinguish between these individuals. The only Jones it has found Plaintiff to state a claim against is the Jones present during the harassment and excessive force Plaintiff experienced, as described in **Counts 1 and 2**. To the extent that Plaintiff attempted to bring claims against another individual named Jones or other claims against the Jones listed in Counts 1 and 2, those claims fail for violation of Fed. R. Civ. P. 8(a).

### **Pending Motions**

Plaintiff's Motion for Attorney Representation, (Doc. 3), and his Motion "to Show I Exhaulted [sic] All Remedies . . ." (Doc. 7), are referred to Magistrate Judge Williams for disposition.

Plaintiff filed an Emergency Notice of Motion for Preliminary Injunction on September 18, 2017. (Doc. 8). However, a review of the Court's docket shows that the Motion was moot at the time Plaintiff filed it. Plaintiff originally submitted a Motion for a temporary restraining order to the Court on August 31, 2017, but as Plaintiff did not include a case number and referenced events at Menard (the current case involves only Pinckneyville Defendants), the Court opened it as a new action, 17-936. The Court then denied the Motion for a Temporary Restraining Order on September 1, 2017. (Case. 17-936, Doc. 3). Plaintiff then filed his Motion seeking a Preliminary Injunction in this case on September 18, 2017. (Doc. 8). Plaintiff stated that he was being transferred in retaliation, and asks the Court to stop the transfer, despite the fact that the Motion itself states that Plaintiff was transferred on August 23, 2017, more than 3

17

weeks prior to the time he filed his Motion with the Court, and a week before he submitted his TRO motion in case No. 17-936. (Doc. 8, p. 6).

Plaintiff's Motion seeking an injunction barring his transfer to Menard is moot. In fact, any injunctive relief Plaintiff may request in this case is now moot because Plaintiff is no longer in the custody or control of the Defendants. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996); *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1998). While a plaintiff may request injunctive relief against his former custodians if he can show that he is likely to be retransferred to that prison, mere speculation about the possibly of such transfer does not suffice. *Preiser v. Newkirk*, 422 U.S. 395, 403 (1975). The party seeking injunctive relief must also demonstrate that the unconstitutional conduct is likely to be repeated. *City of Los Angeles v. Lyons*¸461 U.S. 95, 109 (1983).

Plaintiff's Motion does not state that he expects to be transferred back to Menard or that the conduct he suffered there is likely to be repeated. Plaintiff's Motion is therefore **DENIED** as moot. (Doc. 8).

## Disposition

**IT IS HEREBY ORDERED** that **Counts 1 and 2** survive threshold review. **Count 3** is **DISMISSED without prejudice** as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). **Counts 4-6** are **DISMISSED without prejudice** for failure to state a claim. Bowles, Heck, Meyers, Waller, Wexford, Lind, John Joe, Thomas, Frank Mal Shane, Justice, and McBride are **DISMISSED without prejudice**.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Homoya, Porter, Mercks, Kennedy, Henlly, Adams, Lawless, Pestka, Spiller, Scro, Meyer, Jones, Dudek, James, Keren, Baldwin, Kays, Bennett, Lively, Love, and Williams: (1) Form 5 (Notice of a Lawsuit

and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the

full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 19, 2017**

s/ MICHAEL J. REAGAN
**U.S. Chief District Judge**