**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

DEON HAMPTON, #M-15934,      )
                                 )
          Plaintiff,      )
                                 )
     vs.              )     No. 17-860-MJR
                                 )
CLINT MAYER, et al.,         )
                                 )
          Defendants.     )

**ANSWER AND AFFIRMATIVE DEFENSES**
**TO PLAINTIFF'S AMENDED COMPLAINT**

NOW COME the Defendants, CHAD ADAMS, JOHN BALDWIN, KEITH BENNETT, JOSEPH DUDEK, DONNA JONES, MICHAEL HELSLEY, DAVID HOMOYA, GREG JAMES, NICHOLAS KAYS, MATTHEW KENNEDY, KALE LIVELY, LARUE LOVE, CLINT MAYER, JOHN MERCKS, NICHOLAS PESTKA, DALTON PORTER, NICHOLAS SERO, ELIJAH SPILER, CORD WILLIAMS, JON MCKINSTRY, TREG VANDERHOVE, MAC SHANE FRANK, DUSTIN BOWLES, BRANDON JUSTICE, CHRISTOPHER THOMPSON, RYAN THOMPSON, JOHN WOLFE, and KAREN JAIMET, by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, and pursuant to Rule 8 of the Federal Rules of Civil Procedure, hereby provide their Answer to Plaintiff's Amended Complaint, stating as follows:

**INTRODUCTION**

1.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the First, Eighth, and Fourteenth Amendments to the United States Constitution, and the Illinois Hate Crimes Act.

**Response: Defendants admit this action is filed pursuant to 42 U.S.C. § 1983 alleging violations of Plaintiff's Constitutional rights and the Illinois Hate Crimes Act. Defendants deny any allegations in this paragraph that they deprived Plaintiff of any Constitutional or other legal rights and deny all claims against them.**

2.     Plaintiff is a 26-year-old transgender woman who has been housed at Menard Correctional Center ("Menard"), a high security men's prison, since August 23, 2017. She began living as a girl when she was five years old and has continued to live as a young woman throughout her incarceration.

**Response:  Defendants admit that Plaintiff is 26 years old and identifies as a transgender woman. Defendants deny that Plaintiff currently resides at Menard Correctional Center ("Menard"). Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

3.     Prior to her placement in Menard, Plaintiff was housed at Pinckneyville Correctional Center ("Pinckneyville") for nearly a year. While there, correctional officers sexually assaulted her on multiple occasions. For months, officers forced Plaintiff to have sex with her cellmate for their entertainment. When she reported this abuse, the officers retaliated by beating her and threatening to "bury her in segregation." The officers followed through on this threat by filing false disciplinary charges against her that resulted in a prolonged sentence of segregation. She was also transferred to Menard as a result of these false charges.

**Response:   Defendants admit that Plaintiff was previously housed in Pinckneyville Correctional Center ("Pinckneyville") for nearly a year. Defendants further admit that Plaintiff was transferred to Menard for disciplinary reasons, however, Defendants deny that**

**Plaintiff was transferred due to false charges. Defendants deny the remaining allegations contained in this paragraph.**

4.      Since arriving at Menard, officers have subjected Plaintiff to constant sexual and physical abuse. While physically attacking Plaintiff, threatening, and harassing her, correctional officers at Menard have told her that the abuse is retaliation for the complaint she filed at Pinckneyville regarding the officers there who sexually assaulted her.

**Response:   Defendants deny any allegations in this paragraph that they instructed or otherwise influenced any alleged wrongful acts at Menard. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph against Menard employees.**

5.      The officers at Menard, like those at Pinckneyville, have attempted to cover up their actions by giving Plaintiff false disciplinary tickets, which keep adding to her segregation time, and threatening her with future beatings if she complains about her treatment. Due to the accumulation of false disciplinary tickets filed against her by officers at both Pinckneyville and Menard, Plaintiff will remain in segregation until May 2018.[1]

**Response:   Defendants deny any allegations in this paragraph that they committed wrongful acts against Plaintiff while she was at Pinckneyville. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

---

[1]  Allegations in this complaint focus on the actions of the Pinckneyville officers. Factual allegations related to Plaintiff's experiences in the Menard Correctional Center are included to demonstrate the harm Plaintiff has suffered as a result of the Pinckneyville officer's retaliation

6.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

**Response: Defendants admit that this Honorable Court has jurisdiction in this matter.**

7.      Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this complaint occurred in this judicial district.

**Response:  Defendants admit that the venue is proper.**

**PARTIES**

8.      Plaintiff is, and has been at all relevant times, an Illinois Department of Corrections prisoner. She is currently confined at Menard Correctional Center in Chester, Illinois.

**Response:  Defendants admit that Plaintiff is, and has been at all relevant times, an inmate within the Illinois Department of Corrections.  Defendants deny that Plaintiff is current incarcerated at Menard.**

9.      Defendant John Baldwin is the Director of the Illinois Department of Corrections ("IDOC"). As such, he was acting under color of law. At all relevant times to the events at issue in this case, Defendant Baldwin maintained administrative and supervisory authority over the operations of the all prisons in Illinois, including Pinckneyville Correctional Center. At all relevant times, Defendant Baldwin promulgated rules, regulations, policies, and procedures of the IDOC. Defendant Baldwin is sued in his individual capacity.

**Response:      Defendants admit the allegations contained in this paragraph.**

10.     Defendant Karen Jaimet is the Warden of Pinckneyville Correctional Center. At all times relevant to the events at issue in this case, Defendant Jaimet was employed by the Illinois Department of Corrections. As such, she was acting under color of law. At all times relevant to the events at issue in this case, Defendant Jaimet promulgated rules, regulations, policies, and

procedures at Pinckneyville. Defendant Jaimet is responsible for supervising all staff and managing all operations at Pinckneyville. She is sued in her individual capacity.

**Response:** **Defendants admit the allegations contained in this paragraph.**

11. Defendants Assistant Warden Larue Love, Assistant Warden Thomas, Lieutenant Wolf, Lieutenant Clint Mayer, Sergeant David Homoya, Officer Nicholas Pestka, Officer Cord Williams, Officer Dalton Porter, Officer Michael Helsley, Officer Elijah Spiller, Sergeant Nicholas Scro, Major Chad Adams, Officer Joseph Dudek, Internal Affairs Officer Keith Bennett, Major William Lawless, Officer Matthew Kennedy, Lieutenant Greg James, Officer Nicholas Kays, Officer John Mercks, Major Kale Lively, Officer Donna Jones, Internal Affairs Officer Frank Mal Shane, Officer McKinstry, Officer Brandon Justice, Internal Affairs Officer Bowles, Officer Vanderkhov, and Officer Thompson are officers at Pinckneyville Correctional Center. Defendant Internal Affairs Officer Bradley is an investigator for the Illinois Department of Corrections. At all times relevant to the events at issue in this case, these defendants were acting under color of law and within the scope of their employment with the Illinois Department of Corrections. These defendants are sued in their individual capacities.

**Response:** **Defendants admit the allegations contained in this paragraph.**

## FACTUAL ALLEGATIONS

### Plaintiff is a Transgender Woman

12. Since the young age of five, Plaintiff has identified as a female. Her family and her community also began treating her as a female at a young age.

**Response:** **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

13. In 2012, Plaintiff was diagnosed with gender dysphoria by an IDOC psychiatrist.

**Response:** **Defendants lack personal knowledge regarding the allegations in this paragraph, but, per recorded documentation, admit the allegations contained in this paragraph.**

14. Throughout the years, Plaintiff took hormones intermittently to transition her body from male to female. Plaintiff consistently began cross-sex hormone treatment in IDOC custody in July 2016 while housed at Lawrence Correctional Center.

**Response:** **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

15. From December 2016 to July 2017, Plaintiff's lab levels showed that her testosterone levels were dropping and her estrogen levels were increasing. By March 2017, Plaintiff was no longer in the male range for testosterone levels and she was in the female range for estrogen levels.

**Response:** **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

16. Plaintiff's most recent lab results from August 2017 show that her testosterone levels are currently at 6/ng/dL. The normal reference range for testosterone levels in males is 300-1080 ng/dL. This means that Plaintiff can no longer obtain an erection and is therefore impotent.

**Response:** **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

17. Plaintiff is and has always been sexually attracted exclusively to men.

**Response:** **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

18.     Plaintiff first entered IDOC custody on her current sentence in April 2015. Despite being a transgender woman, Plaintiff was placed in a men's prison, Hill Correctional Center, without receiving a formal, in-person review to determine whether she could be appropriately placed in a women's prison.

**Response:     Defendants, per recorded documentation, admit that Plaintiff identifies as a transgender woman and that she entered IDOC facility, Hill Correctional Center, in April 2015. Defendants, per recorded documentation, deny that Plaintiff failed to receive a Gender Identity Disorder Committee recommendation and consultation. Defendants lack knowledge or information sufficient to form a belief about the truth of any remaining allegations in this paragraph.**

19.     Since entering IDOC custody, Plaintiff has exclusively been housed in male prisons and has experienced endless harassment and abuse by IDOC staff and prisoners because of her transgender status and because she has been inappropriately housed in a men's prison.

**Response:     Defendants admit that Plaintiff has been exclusively housed in male prisons while incarcerated within IDOC. Defendants deny any allegations that they harassed or abused Plaintiff while she was incarcerated at Pinckneyville or that she has been inappropriately housed within IDOC. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

**Plaintiff was Sexually and Physically Abused at Pinckneyville**

20.     In October 2016, Plaintiff was transferred to Pinckneyville. At Pinckneyville, the Defendants discriminated against her and subjected her to a hostile environment because of her gender identity. On a daily basis, the Defendants verbally sexually harassed her. They made sexual comments to her, saying things such as she "sucks good dick" and "your ass is fat, you

must be getting a good dicking," and calling her names such as "creamberry," in reference to anal sex. The Defendants also called her derogatory slurs such as "fag," "faggot," "dick sucker," "bitch," "whore," "he/she," "chick with a dick," and more. Plaintiff consistently asked them to stop, but her requests were met with laughter.

**Response:** **Defendants, per recorded documentation, admit that Plaintiff was transferred to Pinckneyville on October 12, 2016. Defendants deny all other allegations in this paragraph.**

21.    One day in October 2016, Defendant Lieutenant Wolf walked up to Plaintiff while she was in the gym and asked her if she had a dick. He then proceeded to pull her pants and underwear down and look at her private parts. Plaintiff filed a grievance about this incident.

**Response:** **Defendants deny the allegations contained in this paragraph.**

22.    Around December 2016, Plaintiff came to be housed with Denashio Tester, who also identified as a transgender woman. On a daily basis for months, the Defendant Officers verbally harassed Plaintiff and Tester about their gender identity and sexual orientation when they walked by their cell.

**Response:** **Defendants, per recorded documentation, admit that Plaintiff was housed with inmate Tester in December 2016. Defendants deny all other allegations contained in this paragraph.**

23.    Shortly after Plaintiff and Tester became cellmates, Defendants Lieutenant Mayer, Sergeant Homoya, Officer Pestka, Officer Williams, Officer Porter, Officer Helsley, Officer Spiller, and Sergeant Scro came to Plaintiff's cell and told Plaintiff and Tester that they "wanted to see a girl show." They forced Plaintiff and Tester to have sex with each other while the officers watched. The Defendant Officers threatened Plaintiff and Tester with future

beatings, harassment, and more time in segregation if they did not obey their orders and perform sexually.

**Response:      Defendants deny the allegations contained in this paragraph.**

24.      For the next several months, these Defendants would come to Plaintiff's and Tester's cell multiple times a week and force Plaintiff and Tester to engage in sexual acts with each other for their entertainment. The Defendants continued to threaten Plaintiff and Tester with future harm, and so Plaintiff and Tester obeyed their orders, fearing for their lives.

**Response:      Defendants deny the allegations contained in this paragraph.**

25.      On March 4, 2017, at around 9:30 pm, Defendants Lieutenant Mayer, Officer Spiller, Sergeant Scro, Major Adams, Officer Williams, Officer Pestka, Officer Dudek, Officer Porter, and Officer Helsley entered Plaintiff's and Tester's cell. These Defendants made Plaintiff put on a thong and her bra and they made Tester put on his boxers. They then took Plaintiff and Tester out of their cell to an office and forced Plaintiff and Tester to dance sexually while they laughed. They made Plaintiff reveal her breasts and anus. They forced Plaintiff and Tester to touch themselves and each other, and they forced Plaintiff and Tester to have sex with each other. The Defendants grabbed Plaintiff's breasts and butt. They called Plaintiff and Tester derogatory names like "dick sucker," "cock sucker," "man eater," "sissy," "fag," "faggot," "horny sluts," and more.

**Response:      Defendants deny the allegations contained in this paragraph.**

26.      Defendant Lieutenant Mayer then got on the phone and called Defendant Major Lawless. Defendant Lieutenant Mayer gave Plaintiff the phone and forced her to sing Happy Birthday to Major Lawless and to say sexual comments to him like "I want you to fuck me," "you

want me bouncing on your dick while I cream all over it," and "you want me sucking on your dick," all while Defendant Major Lawless laughed.

**Response:** **Defendants, per recorded documentation, admit that Major Lawless received a phone call from the prison on March 4, 2017. Defendants deny all remaining allegations in this paragraph.**

27. After the phone call, the Defendants gave Plaintiff and Tester soda and chips and threatened that if they told anyone about what happened, the officers would "beat their asses and make their bodies disappear."

**Response:** **Defendants deny the allegations contained in this paragraph.**

28. Throughout the next several months, these Defendants pulled Plaintiff and Tester out of their cell approximately four more times and forced them to perform sexual acts for the officers' entertainment. Out of fear, Plaintiff did not file a formal complaint regarding what the Defendants were doing to her and Tester.

**Response:** **Defendants deny the allegations contained in this paragraph.**

29. On May 24, 2017, around 5:00 pm, Defendant Officer Kennedy came to Plaintiff's and Tester's cell and asked, "What y'all doing, flicking or something?" Plaintiff and Tester, tired of all the sexual abuse and harassment, responded that they would file a complaint if he continued to talk to them in that manner Defendant Sergeant Homoya then came by their cell and taunted them, saying, "I wish I could catch y'all fucking," and that he "bets Tester be fucking the shit out of you." He also asked them if they have "ever had a big dick in their mouth?" He also said he could picture Plaintiff sucking his dick on a boat. Then he asked if he could pay them to suck his dick and to see them have sex. He also grabbed his genitals and motioned. Plaintiff and Tester told him that they would file a complaint through

the prison's Prison Rape Elimination Act ("PREA") process if he continued to harass them, and Defendant Sergeant Homoya responded: "If you bitches want to call PREA, I'm going to lock you whores up."

**Response:        Defendants deny the allegations contained in this paragraph.**

30.        Later that night at around 9:30 pm, Defendants Sergeant Homoya, Officer Kennedy, Lieutenant Mayer, Officer Spiller, Sergeant Scro, Major Adams, Officer Williams, Officer Pestka, Officer Dudek, Officer Porter, Officer Helsley, Lieutenant James, Officer Kays, Officer Mercks, Major Lively, and Officer Jones went to Plaintiff's and Tester's cell. Plaintiff stated loud enough for others to hear: "I did nothing wrong, I want to talk to I.A. and the Warden." The Defendants removed Tester from the cell in nothing but his shower shoes and briefs.

**Response:        Defendants deny the allegations contained in this paragraph.**

31.        Defendant Major Adams then cuffed Plaintiff behind her back and walked her into the shower. The commotion woke sleeping prisoners in the wing, and drew others to their cell doors. Defendant Major Adams kicked Plaintiff in the upper chest and pushed her head to the wall. Other Defendants then began slamming, punching, stomping, kicking, and kneeing Plaintiff. One Defendant stuck a finger in her anus. Plaintiff cried out for help and yelled, "I didn't do anything, why are y'all beating me?" Plaintiff begged the Defendants to stop hurting her and the Defendants responded, "Shut up you stupid fag, this is what happens when you call PREA on us."

**Response:        Defendants admit that Plaintiff was taken to the shower on May 24, 2017, prior to being placed in segregation.  Defendants deny all remaining allegations contained in this paragraph.**

32.     The Defendants then grabbed Plaintiff by her neck, hair, and arms and dragged her out of the shower and off the wing to a segregation cell. In that cell, the Defendants pinned her down to the bed with their knees in her back. Plaintiff stated to the Defendants, "Why y'all doing this? I can't breathe."

**Response:     Defendants deny the allegations contained in this paragraph.**

33.     The Defendants then began forcefully removing her clothes by pulling her pants down to her ankles. They attempted to remove her shirt but it would not come off. Defendant Officer Porter then left and returned with what appeared to be a black and silver pocket knife. They then cut her shirt and IDOC-issued bra off, as well as her pants. Plaintiff feared for her life and pleaded with the Defendants not to kill her. The Defendants stood around laughing at her while she was face down and naked on the bed. Defendants Major Lively and Internal Affairs Bennett stood by and watched the officers beat Plaintiff and cut off her clothes. Defendant IA Bennett said that he did not like fags, and that there were no women there, only men.

**Response:     Defendants admit that Plaintiff's clothing was removed on May 24, 2017, after Plaintiff refused to remove them.  Defendants deny that a knife was used to remove the clothing.   Defendants deny all remaining allegations contained in this paragraph.**

34.     The Defendants then forcefully removed the cuffs, cutting her wrists. They picked up the ripped clothing and left her in the cold cell without a jumpsuit for several hours. Plaintiff cried for hours after the incident and screamed that she needed to speak with PREA and a crisis team, but she received no assistance.

**Response:     Defendants deny the allegations contained in this paragraph.**

35.     Defendant Sergeant Homoya prevented Plaintiff from receiving any medical care. He stayed and did overtime that night, and told Nurse Kim Richardson that Plaintiff was fine so that Plaintiff would not be seen by the medical staff.

**Response:      Defendants deny the allegations contained in this paragraph.**

36.     The next day on May 25, Plaintiff filed a formal PREA complaint with mental health staff Ms. Mason—Plaintiff detailed the physical assault she suffered the night before as well as the sexual abuse she experienced for months.

**Response:      Defendants, per recorded documentation, admit that Plaintiff discussed alleged misconduct by Pinckneyville staff with mental health staff Ms. Mason.  Defendants deny any allegations in this paragraph that the physically or sexually assaulted Plaintiff and deny the allegations against them.**

37.     Defendants Internal Affairs Officer Frank Mal Shane and Internal Affairs Officer Bowles then came to speak with Plaintiff. At first Plaintiff thought they were investigating her PREA claim, but they ended up focusing solely on Plaintiff's relationship with Tester. Plaintiff attempted to turn the conversation towards her assault the previous night. She told them that she had injuries on her wrists and bruises on her chest, but they failed to take any pictures of her injuries. She also told them about all the sexual abuse she experienced, including the phone sex incident from March. They offered to make a deal with her and allow her and Tester to be placed together if she dropped her PREA report. Plaintiff refused to drop her report, and Defendants Internal Affairs Officers Shane and Bowles said she would be given "bogus tickets" and "buried in seg," and would not be fed or given a shower.

**Response:      Defendants, per recorded documentation, admit that Defendant Frank spoke with Plaintiff about his PREA complaint.  Defendants lack knowledge or information**

sufficient to form a belief about the truth of any allegations in this paragraph relating to Plaintiff's thoughts or mental impressions. Defendants deny the remaining allegations contained in this paragraph.

38. From May 24, 2017, until she was transferred out of Pinckneyville on August 23, 2017, Plaintiff remained in segregation for all but approximately three days due to various alleged disciplinary infractions—she was given numerous disciplinary tickets by the Defendant Officers, who continued to sexually harass and physically abuse her, which kept increasing her segregation time. The Defendant Officers gave her bogus disciplinary tickets because she filed grievances detailing the abuse she was experiencing.

**Response: Defendants, per recorded documentation, admit that Plaintiff was in segregation while at Pinckneyville after being found guilty of multiple rule infractions. Defendants deny all other allegations contained in this paragraph, including any allegations of retaliation, sexual harassment or physical abuse.**

39. While in segregation, Plaintiff was denied her transgender support group, which is psychosocial support that she requires. She was denied phone privileges. She was also frequently denied a shower and food under the pretense that she was on a hunger strike. Plaintiff lost over 35 pounds as a result.

**Response: Defendants, per recorded documentation, admit that Plaintiff was not eligible for group mental health while in segregation. Defendants deny all remaining allegations contained in this paragraph.**

40. The Defendants never provided Plaintiff with a new IDOC-issued bra, which she was approved for, after they cut it off during the May 24, 2017 attack.

**Response:** **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, but deny any allegations against them.**

41. On June 16, 2017, Plaintiff again reported to Internal Affairs and Mental Health the sexual and physical abuse she was experiencing. Three days later, she was given a ticket for allegedly making threats for which she was sentenced to an additional three months in segregation. Additionally, Defendant Officer Spiller told her he would "break her fucking neck" for reporting what he did on March 4.

**Response:** **Defendants deny the allegations contained in this paragraph.**

42. On June 29, 2017, Plaintiff attempted to speak with a crisis team member and mental health. Defendant Officer McKinstry told Plaintiff that she "can't have shit," and "to lay his faggot ass down." When Plaintiff said she was hungry and asked for her lunch tray, Defendant Officer McKinstry said, "Starve bitch."

**Response:** **Defendants deny the allegations contained in this paragraph.**

43. All the harassment, abuse, and trauma Plaintiff was experiencing at Pinckneyville caused her extreme stress and anxiety. Around July 2017, the mental health staff at Pinckneyville prescribed Plaintiff lithium to help control her depressive symptoms. The mental health staff also labeled Plaintiff Serious Mentally Ill ("SMI").

**Response:** **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph pertaining to Plaintiff's mental health status. Defendants, per recorded documentation, admit that on July 14, 2017, Plaintiff was labeled as serious mentally ill and prescribed Plaintiff Lithium for mood swings. Defendants deny any allegations in this paragraph that they committed illegal or wrongful acts against Plaintiff.**

44.     On July 1, 2017, Defendant Internal Affairs Officer Bennett gave Plaintiff a ticket for allowing another prisoner to use her Securus pin number to contact her mother. In her hearing, Plaintiff stated, "He used my pin number to contact an outside source, due to me being sexually and physically assaulted by an IDOC correctional officer, so I have to do whatever I could to get help." Plaintiff was given an additional month of C Grade, to be served consecutive to the prior ticket.

**Response:     Defendants, per recorded documentation, admit the allegations in this paragraph, but deny they sexually and physically assaulted the Plaintiff and deny the claims against them.**

45.     On July 4, 2017, Defendant Assistant Warden Love was doing rounds when he stopped and asked a lieutenant and an officer, "Is that fag right there?" Plaintiff was in her cell and said, "Can I talk to you — why would you say what you just said about me?" Defendant Assistant Warden Love responded, "I ain't comin to that damn cell, so if you wanna talk, talk to me from right here." Defendant Assistant Warden Love was heard talking about how he does not condone gay peoples' lifestyle, and using derogatory terms. He also said "this is a men's joint, nothing here but boys and men, and men wanna be girls."

**Response:     Defendants deny the allegations contained in this paragraph.**

46.     On July 8, 2017, around 9:30 am, Defendant Officer Justice was passing out trays of food when Plaintiff asked him if she could speak with the mental health staff. Defendant Officer Justice opened the chuck door of her cell, and when she reached for the tray, he smacked her hard in the face and arm with it. Plaintiff screamed for help. Defendant Officer Justice refused to give Plaintiff her food tray and then told everyone on shift that Plaintiff was on hunger strike, even though she was not. He then moved her to a different cell.

**Response:** **Defendants, per recorded documentation, admit that Plaintiff declared a hunger strike and was moved to a different cell on July, 8, 2017. Defendants deny all remaining allegations in this paragraph.**

47. Later that day Defendant Officer Spiller, Lieutenant Wolf, Officer Williams, Officer Thompson, and Internal Affairs Officer Bennett laughed at Plaintiff when she told them she was not on a hunger strike and asked for food and a shower, called her derogatory names, including a "fag bitch snitch," and threatened bodily harm. Defendant Officer Spiller told Plaintiff that he wanted "to put her and Tester in a body bag." Plaintiff wrote a grievance about these incidents and reported the Defendants to the mental health staff, including Stacie Murray. The next day Plaintiff received a disciplinary ticket for allegedly threatening Officer Spiller.

**Response:** **Defendants, per recorded documentation admit that Plaintiff was issued a ticket on July 8, 2017, and that the ticket was served on July 10, 2017. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph concerning a grievance or Plaintiff reporting to mental health staff. Defendants deny all remaining allegations in this paragraph.**

48. On July 19, 2017, Mental Health Counselor Kara Ratajczyk wrote Plaintiff a ticket for allegedly "l[ying] about [a] crisis." Plaintiff had called for a crisis team and began to speak about the tickets, which she believed were retaliatory. Ratajczyk asked Plaintiff if she was suicidal, and when she said no, Ratajczyk wrote her a ticket.

**Response:** **Defendants, per recorded documentation, admit that Plaintiff was issued a ticket on July 19, 2017, for giving false information to an employee. Defendants, per recorded documentation, deny that the ticket was only issued because Plaintiff was not suicidal. Defendants deny any other allegations in this paragraph of wrongdoing.**

49.     On August 2, 2017, Defendant Officer McKinstry slammed Plaintiff's head against the wall and said, "PREA that bitch." He then wrote her a disciplinary ticket for disobeying an order.

**Response:     Defendants, per recorded documentation, admit that Plaintiff was issued a disciplinary ticket on August 2, 2017, for disobeying an order based on Plaintiff's refusal to "cuff up." Defendants deny all other allegations in this paragraph.**

50.     Later in August, after Plaintiff asked for a crisis team, Defendant Officer Vanderkhov slammed Plaintiff's head against the wall, threw her to the floor, and dragged her to the shower area. While he was abusing Plaintiff, he told her, "This is what you get when you call PREA." Defendant Officer Vanderkhov then wrote Plaintiff a disciplinary ticket for asking for the crisis team.

**Response:     Defendants deny the allegations in this paragraph.**

51.     From May 24, 2017, until she was transferred out of Pinckneyville on August 23, 2017, the Defendant Officers used excessive force against Plaintiff multiple times a week.

**Response:     Defendants deny the allegations in this paragraph.**

52.     Defendants Assistant Warden Thomson and Assistant Warden Love participated in verbally sexually harassing Plaintiff. These Defendants also knew that the officers were sexually and physically abusing Plaintiff, and they allowed the abuse to occur. They also attempted to intimidate Plaintiff into not filing complaints.

**Response:     Defendants deny the allegations in this paragraph.**

53.     In mid-August, Plaintiff attempted to file an emergency motion with the court. Defendant Lieutenant Wolf took the motion from Plaintiff and told her that he would make sure the motion was mailed to the Court as long as Plaintiff pulled down her pants and showed him her

private parts. Upon information and believe, Defendant Lieutenant Wolf never sent Plaintiff's motion to the court.

**Response:** **Defendants deny the allegations in this paragraph.**

54. From May 25, 2017, until August 23, 2017, Plaintiff filed multiple grievances and PREA complaints regarding the sexual and physical abuse she experienced at Pinckneyville, including the March 4 and May 24 incidents. Defendants Internal Affairs Officers Shane, Bowles, and Bennett constantly threatened Plaintiff after she filed grievances or reported the Defendant Officers' conduct to mental health with more segregation time and future beatings. They also threatened on multiple occasions that they were going to ship her to a prison down south so that she can be raped and killed.

**Response:** **Defendant deny all allegations in this paragraph of alleged misconduct or threats. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph**

55. Sometime in late July/early August, Internal Affairs Officer Bradley, an investigator from Springfield, spoke to Plaintiff while he was visiting Pinckneyville. He told her that he was going to get rid of the recording of the March 4 phone call and the knife the officers used to cut her clothes on May 24, and make sure that her grievances are not processed. He threatened to bury her in segregation and send her to Menard if she did not drop her complaints.

**Response:** **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

56. As the Chief Administrative Officer, Defendant Warden Jaimet reviewed the many grievances Plaintiff filed. Director Baldwin also was aware of Plaintiff's grievances. Yet despite

knowing about all the sexual and physical abuse Plaintiff was experiencing at Pinckneyville, Defendants Warden Jaimet and Director Baldwin did nothing to stop the abuse.

**Response:** **Defendants admit that Plaintiff submitted a limited amount of grievances while she was in Pinckneyville. Defendants deny all other allegations contained in this paragraph.**

57. Shortly before Plaintiff was transferred to Menard, Defendant Warden Jaimet came to Plaintiff's cell with a number of other officers and told Plaintiff that the officers were "a family that sticks together," and that she was not going to allow Plaintiff "to bring her people down."

**Response:** **Defendants deny the allegations contained in this paragraph.**

58. On August 24, 2017, Plaintiff received a letter from the Administrative Review Board stating that her grievance dated August 8, 2017, detailing the March 4 and May 24 incidents, was going to be investigated by Internal Affairs at Pinckneyville. Upon information and belief, that investigation never occurred.

**Response:** **Defendants deny the allegations that investigations never occurred. Defendants, per recorded documentation, admit that the Administrative Review Board sent Plaintiff an August 8, 2017, letter regarding the March 4 and May 24 allegations and stating that they would be investigated by Internal Affairs at Pinckneyville. Defendants deny the remaining allegations in this paragraph.**

### Plaintiff Continues to Experience Sexual and Physical Abuse at Menard

59. On August 23, 2017, Plaintiff was transferred to Menard, a high security male prison. Upon information and belief, Plaintiff was transferred to Menard because she had

accumulated a number of false disciplinary tickets in retaliation for reporting the abuse she suffered at the hands of the Defendants. Plaintiff was immediately placed in segregation upon arrival.

**Response:** **The allegations in this complaint relate to incidents the allegedly occurred at Pinckneyville. Upon information and belief, Plaintiff filed a separate lawsuit, Hampton v. Baldwin, 17-CV-936, concerning allegations of misconduct at Menard. Upon information and believe, Plaintiff dismissed that lawsuit as part of a settlement. Defendants admit Plaintiff was transferred to Menard on or about August 23, 2017. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, but deny the claims against them.**

60. Since arriving at Menard, the correctional officers have constantly verbally harassed and sexually and physically abused her both in retaliation for her complaints, and because of her gender identity. Officers at Menard have made it clear to Plaintiff that they know she filed a PREA complaint about the sexual abuse she experienced at Pinckneyville and that they are going to punish her at Menard for speaking up against fellow IDOC officers. The officers have made various statements to Plaintiff such as "we got a call from our buddies at Pinckneyville," "we know who you are," "Pinckneyville told me to put you on my target list," "we got something up our sleeve for you," "we will bury you in seg," "we will make sure you get raped," and "we will make sure you do not make your out date," referencing the day she is supposed to be released from IDOC custody.

**Response:** **The allegations in this complaint relate to incidents the allegedly occurred at Pinckneyville. Upon information and belief, Plaintiff filed a separate lawsuit, Hampton v. Baldwin, 17-CV-936, concerning allegations of misconduct at Menard. Upon information and believe, Plaintiff dismissed that lawsuit as part of a settlement. Defendant deny any**

**allegations in this paragraph that they solicited or encouraged any alleged retaliatory actions while Plaintiff was incarcerated at Menard. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, but deny the claims against them.**

61.     The officers at Menard, like those at Pinckneyville, have attempted to cover up their actions by giving Plaintiff false disciplinary tickets. Due to the accumulation of false disciplinary tickets filed against her by officers at both Pinckneyville and Menard, Plaintiff will remain in segregation until approximately May 2018.

**Response:     The allegations in this complaint relate to incidents the allegedly occurred at Pinckneyville. Upon information and belief, Plaintiff filed a separate lawsuit, Hampton v. Baldwin, 17-CV-936, concerning allegations of misconduct at Menard. Upon information and believe, Plaintiff dismissed that lawsuit as part of a settlement. Defendant deny any allegations in this paragraph that they solicited or encouraged any alleged retaliatory actions while Plaintiff was incarcerated at Menard. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, but deny the claims against them.**

### COUNT I — CRUEL AND UNUSUAL PUNISHMENT
### (Eighth Amendment Claim for Damages under 42 U.S.C. § 1983)

62.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**Response:     Defendants repeat their responses to the preceding paragraphs.**

63.     Count I is alleged against Defendants Lieutenant Wolf, Lieutenant Mayer, Sergeant Homoya, Officer Pestka, Officer Williams, Officer Porter, Officer Helsley, Officer Spiller, Sergeant Scro, Major Adams, Officer Dudek, Major Lawless, Officer Kennedy, Lieutenant James, Officer

Kays, Officer Mercks, Internal Affairs Officer Bennett, Major Lively, Officer Jones, Officer McKinstry, Officer Justice, Officer Thompson, Officer Vanderkhov, Warden Jaimet, Assistant Warden Thomas, Assistant Warden Love, and Director Baldwin.

**Response:** **Defendants admit the allegations in this paragraph, but deny the claims against them.**

64. By subjecting Plaintiff to constant sexual harassment and sexual abuse, including forcing Plaintiff to perform sexually for their entertainment and sexually assaulting Plaintiff, the Defendants inflicted unnecessary and wanton pain on Plaintiff without any legitimate penological purpose, in violation of Plaintiff's Eight Amendment rights.

**Response:** **Defendants deny the allegations contained in this paragraph.**

65. The Defendants' above-described actions and omissions were undertaken with malice and/or reckless disregard for Plaintiff's clearly established constitutional rights.

**Response:** **Defendants deny the allegations contained in this paragraph.**

66. As a direct and proximate result of the Defendants' unconstitutional conduct, Plaintiff suffered damages, including bodily injury, pain, suffering, emotional distress, anguish, and humiliation.

**Response:** **Defendants deny the allegations contained in this paragraph.**

### COUNT II — VIOLATION OF THE EQUAL PROTECTION CLAUSE
### (Fourteenth Amendment Claim for Damages under 42 U.S.0 § 1983)

67. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**Response:** **Defendants repeat their responses to the preceding paragraphs.**

68. Count II is alleged against all Defendants Lieutenant Wolf, Lieutenant Mayer, Sergeant Homoya, Officer Pestka, Officer Williams, Officer Porter, Officer Helsley, Officer Spiller,

Sergeant Scro, Major Adams, Officer Dudek, Major Lawless, Officer Kennedy, Lieutenant James, Officer Kays, Officer Mercks, Internal Affairs Officer Bennett, Major Lively, Officer Jones, Officer McKinstry, Officer Justice, Officer Thompson, Officer Vanderkhov, Warden Jaimet, Assistant Warden Thomas, Assistant Warden Love, and Director Baldwin.

**Response:** **Defendants admit the allegations in this paragraph, but deny the claims against them.**

69.     The Defendants continually subjected Plaintiff to verbal sexual harassment due to her gender identity. The verbal harassment is so pervasive and ongoing that it constitutes intentional discrimination on the basis of her gender identity. Plaintiff is subjected to constant insults, threats, intimidation, and humiliation that male prisoners do not endure.

**Response:** **Defendants deny the allegations contained in this paragraph.**

70.     As a result of the unjustified and unconstitutional conduct of the individual Defendants, Plaintiff suffered and continues to suffer damages, including but not limited to, actual damages, humiliation, pain, fear, and emotional distress.

**Response:** **Defendants deny the allegations contained in this paragraph.**

## COUNT III — EXCESSIVE FORCE
### (Eighth Amendment Claim for Damages under 42 U.S.C. § 1983)

71.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**Response:** **Defendants repeat their responses to the preceding paragraphs.**

72.     Count III is against Defendants Sergeant Homoya, Officer Kennedy, Lieutenant Mayer, Officer Spiller, Sergeant Scro, Major Adams, Officer Williams, Officer Pestka, Officer Dudek, Officer Porter, Officer Helsley, Lieutenant James, Officer Kays, Officer Mercks, Officer Jones, Officer Justice, Officer McKinstry, and Officer Vanderkhov.

**Response:** **Defendants admit the allegations in this paragraph, but deny the claims against them.**

73. The actions of the Officer Defendants described above constituted unreasonable and excessive force, without legal cause, in violation of Plaintiff's Eighth Amendment rights.

**Response:** **Defendants deny the allegations contained in this paragraph.**

74. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiff's clearly established constitutional rights, and not for any legitimate penological purpose.

**Response:** **Defendants deny the allegations contained in this paragraph.**

75. The actions of the Officer Defendants were the direct and proximate cause of the violations of Plaintiff's constitutional rights and of the damages suffered by Plaintiff, including bodily injury, pain, suffering, emotional distress, anguish, and humiliation.

**Response:** **Defendants deny the allegations contained in this paragraph.**

### COUNT IV — FAILURE TO INTERVENE
### (Eighth Amendment Claim for Damages under 42 U.S.C. § 1983)

76. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**Response:** **Defendants repeat their responses to the preceding paragraphs.**

77. Count IV is alleged against Defendants Sergeant Homoya, Officer Kennedy, Lieutenant Mayer, Officer Spiller, Sergeant Scro, Major Adams, Officer Williams, Officer Pestka, Officer Dudek, Officer Porter, Officer Helsley, Lieutenant James, Officer Kays, Officer Mercks, Officer Jones, Major Lively, Internal Affairs Officer Bennett, Assistant Warden Thomas, Assistant Warden Love, Warden Jaimet, and Director Baldwin.

**Response:** **Defendants admit the allegations in this paragraph, but deny the claims against them.**

78.     During the excessive force events described above, the Defendant Officers stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity and duty to do so.

**Response:** **Defendants deny the allegations contained in this paragraph.**

79.     Defendants Assistant Warden Thomas, Assistant Warden Love, Warden Jaimet, and Director Baldwin were all aware of the Defendant Officers' use of excessive force against Plaintiff and failed to take any measures to stop the abuse.

**Response:** **Defendants deny the allegations contained in this paragraph.**

80.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiff's clearly established constitutional rights, and not for any legitimate penological purpose.

**Response:** **Defendants deny the allegations contained in this paragraph.**

81.     As a direct and proximate result of the Defendants' failure to intervene, Plaintiff suffered damages, including bodily injury, pain, suffering, emotional distress, anguish, and humiliation.

**Response:** **Defendants deny the allegations contained in this paragraph.**

**COUNT V — RETALIATION**
**(First Amendment Claim for Damages under 42 U.S.C. § 1983)**

82.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**Response:** **Defendants repeat their responses to the preceding paragraphs.**

83.     Count V is alleged against all the Defendants.

**Response: Defendants admit the allegations in this paragraph, but deny the claims against them.**

84. As described in detail above, all the Defendants retaliated against Plaintiff for exercising her constitutional right to report the sexual and physical abuse she experienced, in violation of the First Amendment.

**Response: Defendants deny the allegations contained in this paragraph.**

85. The individual Defendants' above-described actions were undertaken with malice and/or reckless disregard for Plaintiff's clearly established constitutional rights.

**Response: Defendants deny the allegations contained in this paragraph.**

86. As a direct and proximate result of the individual Defendants' unconstitutional conduct, Plaintiff suffered damages, including bodily injury, pain, suffering, emotional distress, anguish, and humiliation.

**Response: Defendants deny the allegations contained in this paragraph.**

### COUNT VI — CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS
### (Conspiracy Claim for Damages under 42 U.S.C. § 1983)

87. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**Response: Defendants repeat their responses to the preceding paragraphs.**

88. Count VII is alleged against all the individual Defendants.

**Response: Defendants admit the allegations in this paragraph, but deny the claims against them.**

89. Each of the Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

**Response: Defendants deny the allegations contained in this paragraph.**

90. Each of the Defendants took concrete steps to enter into an agreement to retaliate against Plaintiff for reporting the abuse she experienced at Pinckneyville and thereby deprive Plaintiff of her First Amendment rights.

**Response:** **Defendants deny the allegations contained in this paragraph.**

91. In furtherance of this conspiracy, each of the Defendants committed specific overt acts, as described above in the Complaint, and was an otherwise willful participant in joint activity.

**Response:** **Defendants deny the allegations contained in this paragraph.**

92. Each individual Defendant is liable for the violation of Plaintiff's rights by any other individual Defendant.

**Response:** **Defendants deny the allegations contained in this paragraph.**

93. Each individual Defendant acted maliciously, willfully, wantonly, and/or with reckless disregard for Plaintiff's clearly established constitutional rights.

**Response:** **Defendants deny the allegations contained in this paragraph.**

94. As a direct and proximate result of the Defendants' conspiracy, Plaintiff suffered damages, including bodily injury, pain, suffering, emotional distress, anguish, and humiliation.

**Response:** **Defendants deny the allegations contained in this paragraph.**

**COUNT VII — ILLINOIS HATE CRIMES ACT**
**(State law claim for Damages)**

95. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**Response:** **Defendants repeat their responses to the preceding paragraphs.**

96. Count XI is alleged against all the Defendants.

**Response:** **Defendants admit the allegations in this paragraph, but deny the claims against them.**

97. The Illinois Hate Crimes Act states, in relevant part, that "[i]ndependent of any criminal prosecution" victims of hate crimes "may bring a civil action for damages, injunction or other appropriate relief." 720 ILCS 5/12-7.1(c).

**Response:** **Defendants admit the allegations in this paragraph, however, Defendants deny that the Illinois Hate Crimes Act is appropriately in this current action.**

98. A person commits a hate crime when "by reason of the actual or perceived . . . gender [or] sexual orientation . . . regardless of the existence of any other motivating factor or factors," he or she commits various offenses, including, inter alia, assault, battery, mob action, and disorderly conduct. 720 ILCS 5/12-7.1(a).

**Response:** **Defendants deny the allegations contained in this paragraph.**

99. The individual Defendants committed hate crimes against Plaintiff by physically and sexually assaulting her and by intimidating and harassing her using obscene language due to her gender and sexual orientation.

**Response:** **Defendants deny the allegations contained in this paragraph.**

100. As a result of the Defendants' actions, Plaintiff suffered damages, including bodily injury, pain, suffering, emotional distress, anguish, and humiliation.

**Response:** **Defendants deny the allegations contained in this paragraph.**

### COUNT VIII — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(State law claim for Damages)

101. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**Response:** **Defendants repeat their responses to the preceding paragraphs.**

102. Count XII is alleged against all the Defendants.

**Response:** **Defendants admit the allegations in this paragraph, but deny the claims against them.**

103.     The individual Defendants' conduct described above was extreme and outrageous. The Defendants' actions were rooted in an abuse of power and authority, and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff.

**Response:** **Defendants deny the allegations contained in this paragraph.**

104.     As a direct and proximate result of the Defendants' actions, Plaintiff suffered and continues to suffer severe emotional distress.

**Response:** **Defendants deny the allegations contained in this paragraph.**

### COUNT IX —CIVIL CONSPIRACY
### (State Law Claim for Damages)

105.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**Response:** **Defendants repeat their responses to the preceding paragraphs.**

106.     Count XIII is alleged against all the individual Defendants.

**Response:** **Defendants admit the allegations in this paragraph, but deny the claims against them.**

107.     As described more fully above, the Defendants, acting in concert with other as-yet unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

**Response:** **Defendants deny the allegations contained in this paragraph.**

108.    In furtherance of the conspiracy, the Defendants committed overt acts and were otherwise willful participants in joint activity including but not limited to the intentional infliction of emotional distress upon Plaintiff.

**Response:    Defendants deny the allegations contained in this paragraph.**

109.    The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and/or reckless disregard to Plaintiff's rights.

**Response:    Defendants deny the allegations contained in this paragraph.**

110.    As a direct and proximate result of the Defendants' conspiracy, Plaintiff suffered injuries, including severe emotional distress and anguish.

**Response:    Defendants deny the allegations contained in this paragraph.**

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Deon "Strawberry" Hampton requests that this Court enter judgment in her favor against the Defendants, awarding compensatory damages, costs and attorneys' fees, and punitive damages against each of the Defendants in their individual capacities, and for such further additional relief as this Court may deem appropriate and just.

**Response:    Defendants deny that Plaintiff is entitled to any relief whatsoever.**

## JURY DEMAND

**Defendants demand a trial by jury.**

## <u>AFFIRMATIVE DEFENSES</u>

1.    Plaintiff has failed to exhaust all available administrative remedies, prior to initiating this action so his claims are bared by the Prison Litigation Reform Act. 42 U.S.C. § 1997e(a).

2.      At all times relevant herein, Defendants acted in good faith in the performance of their official duties and without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants are, therefore, protected from suit by the doctrine of qualified immunity.

3.      Plaintiff's claims, if successful, would necessarily imply the invalidity of discipline he received while incarcerated and Plaintiff has not shown that his discipline has been reversed, expunged, declared invalid or called into questions by a court. As such, Plaintiff claims are barred by the *Heck* doctrine.

4.      At all times relevant to the complaint, Defendants were performing official discretionary duties in good faith and are entitled to Public Official Immunity.

5.      At all times relevant to the Complaint, Defendants acted in good faith within the scope of their official duties as employees of the State of Illinois. Therefore, any state law claims are against the State and are barred by statutory sovereign immunity.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this Honorable Court deny Plaintiff's requested relief and enter judgment in their favor.

Respectfully Submitted,

CHAD ADAMS, JOHN BALDWIN,
KEITH BENNETT, JOSEPH DUDEK, DONNA
JONES, MICHAEL HELSLEY, DAVID
HOMOYA, GREG JAMES, NICHOLAS KAYS,
MATTHEW KENNEDY, KALE LIVELY,
LARUE LOVE, CLINT MAYER, JOHN
MERCKS, NICHOLAS PESTKA, DALTON
PORTER, NICHOLAS SERO, ELIJAH SPILER,
CORD WILLIAMS, JON MCKINSTRY, TREG
VANDERHOVE, MAC SHANE FRANK,
DUSTIN BOWLES, BRANDON JUSTICE,
CHRISTOPHER THOMPSON, RYAN

THOMPSON, JOHN WOLFE, and KAREN
JAIMET,,

        Defendants,

R. Levi Carwile, #6317375        LISA MADIGAN, Attorney General
Assistant Attorney General      State of Illinois
500 South Second Street
Springfield, IL  62701          Attorney for Defendants,
(217) 557-0261 Phone
(217) 524-5091 Fax        By:  s/ R. Levi Carwile
Email:  rcarwile@atg.state.il.us     R. Levi Carwile
                                   Assistant Attorney General

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

DEON HAMPTON, #M-15934,      )
                                         )
            Plaintiff,        )
                                         )
     vs.                    )     No. 17-860-MJR
                                         )
CLINT MAYER, et al.,            )
                                         )
           Defendants.     )

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on February 26, 2018, the foregoing document, Answer and Affirmative Defenses, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

        Sheila A. Bedi          Sheila.bedi@law.northwestern.edu
        Vanessa del Valle     Vanessa.delvalle@law.northwestern.edu

                        Respectfully submitted,

                        s/ R. Levi Carwile
                        R. Levi Carwile, #6317375
                        Assistant Attorney General
                        General Law Bureau
                        Office of the Attorney General
                        500 South Second Street
                        Springfield, IL  62701
                        (217) 557-0261 Phone
                        (217) 524-5091 Fax
                        rcarwile@atg.state.il.us